# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0680V

| | |
|---|---|
| JEFF KLEINSCHMIDT, | Chief Special Master Corcoran |
| Petitioner, | Filed: December 5, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On June 4, 2020, Jeff Kleinschmidt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on September 11, 2018. Petition at 1, ¶¶ 1, 12. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, I find that Petitioner is entitled to compensation, and I award damages in the amount **$55,000.00**, **representing his actual pain and suffering, plus $5,349.34 for past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

Along with his petition, Mr. Kleinschmidt filed the affidavit and medical records required by the Vaccine Act. Exhibits 1-6, filed June 4, 2020, ECF No. 1; *see* Section 11(c). On June 12, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 8.

On July 26, 2021, Respondent indicated he was willing to engage in settlement discussions. ECF No. 19. Approximately seven months later, Petitioner reported the parties had reached an impasse in their settlement discussions. Status Report, filed Feb. 3, 2022, ECF No. 26.

Respondent filed his Rule 4(c) Report on March 21, 2022, arguing that Petitioner had failed to provide sufficient evidence to satisfy the requirements of a Table SIRVA injury. ECF No. 27. Specifically, he maintains that Petitioner's alleged injury does not meet the second and third criteria of the Qualifications and Aids to Interpretation ("QAI") – related to pain onset and symptom location, for a Table SIRVA. *Id.* at 5-6; *see* 42 C.F.R. § 100.3(c)(10)(ii) - (iii) (2017). Regarding the third criterion – that the location of a petitioner's pain and reduced range of motion ("ROM") be limited to the arm in which the vaccination was administered, Respondent relies upon his belief that the vaccine record does not sufficiently indicate the site of vaccination. Rule 4(c) Report at 5-6; *see* 42 C.F.R. § 100.3(c)(10)(iii).

Thereafter, I shared my views regarding onset and site of vaccination, indicating that, although I did not believe Petitioner's delay in seeking treatment prevented him from establishing the required onset, it was reflective of a less severe SIRVA injury. ECF No. 29 (Order issued August 5, 2022). I instructed the parties to resume their settlement discussions. *Id.*

After three months, Petitioner indicated the parties had reached an impasse in their renewed settlement discussions. Status Report, filed Nov. 27, 2022, ECF No. 34. Thereafter, Petitioner filed briefing regarding entitlement and damages. Petitioner's Brief in Support of Entitlement and Damages ("Brief"), Feb. 22, 2023, ECF No. 40. Petitioner observes that the vaccine record contains a notation "LA" - indicating the flu vaccine Petitioner received was administered in his left arm. *Id.* at 9 (citing Exhibit 1 at 1 (vaccine record)). Regarding pain onset, he emphasizes the consistent histories he provided when seeking treatment, linking his shoulder pain to the vaccine. Brief at 9-12. Petitioner requests $80,000.00 for pain and suffering and $5,349.33 for out-of-pocket expenses. *Id.* at 12.

In response, Respondent filed briefing setting forth his arguments regarding onset and compensation. Respondent's Response to Petitioner's Motion for Ruling on the Record, and Brief in Support of Damages ("Opp."), filed Apr. 28, 2023, ECF No. 42. Thus, it appears Respondent has abandoned his argument related to situs and the third QAI criterion. *See id.* at 5-10 (entitlement discussion). Regarding pain onset, he maintains the histories Petitioner provided in the contemporaneously created medical records and later assertions in affidavits are insufficient to establish onset within 48 hours of vaccination. *Id.* at 6-8. He insists that, if I find Petitioner entitled to compensation, a pain and suffering award of $35,000.00 is sufficient and otherwise objects only to the mileage rate Petitioner used when calculating his expenses. *Id.* at 15.

Approximately one week later, Petitioner filed his reply, reiterating his arguments related to onset and compensation. Petitioner's Reply to Respondent's Response to Petitioner's Brief in Support of Entitlement and Damages ("Reply"), filed May 5, 2023, ECF No. 43. The matter is now ripe for adjudication.

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

4

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

#### 1. Pain Onset – First Criterion

Respondent contests the second SIRVA Table claim criterion - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Opp. at 6-8; Rule 4(c) Report at 6; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Citing the more than four-month delay before Petitioner sought medical treatment, the mildness of his initial pain, and the lack of a specific description of pain within 48 hours of vaccination in the medical records (Opp. at 7), Respondent argues "[P]etitioner's medical records fail to demonstrate that the onset of his alleged shoulder pain was within 48 hours of his flu vaccination" (*id.* at 6-7).

Petitioner counters that "[his] affidavit testimony, supported by his medical records, provide[s] preponderant evidence that his left shoulder pain began within 48 hours of vaccination." Reply at 1. Acknowledging that his initial pain could be properly characterized as "soreness, . . . a mild discomfort that did not resolve" (*id.*), he emphasizes the statement from his wife (a board-certified Physician's Assistant) that he complained of pain immediately. *Id.* at 1-2 (citing his wife's affidavit filed as Exhibit 7). He maintains that the descriptions he used to identify the onset of his left shoulder pain, such as *after* and *since then* have been found by me to indicate an immediate pain onset. *Id.* at 2-3 (citing *Williams v. Sec'y of Health & Hum. Servs.,* No. 17-1046V, 2020 WL 3579763, at *5 (Fed. Cl. Spec. Mstr. Apr. 1, 2020)).

Delay in seeking treatment for a SIRVA injury is not by itself evidence that onset of pain was not immediate. Indeed, as I have previously stated in numerous decisions and rulings, "it is often common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own." *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2020 WL 8373365, at *3 (Fed. Cl. Spec. Mstr. Dec. 4, 2020). Additionally, Petitioner was not seen during this four-and one-half-month period for any other condition or illness. Such intervening evidence - which can collaborate or undermine a petitioner's claim, is totally absent here.

5

Furthermore, there is reasonable record evidence of onset consistent with this Table requirement. When Petitioner first mentioned and later sought treatment for his left shoulder pain, he consistently reported an immediate onset. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

Although he did not seek treatment for left shoulder pain at his first medical appointment post-vaccination (a primary care provider ("PCP") appointment for high blood pressure and lab work attended on February 18, 2019), Petitioner mentioned pain in his left arm *after* receiving a flu shot. Exhibit 2 at 11, 14. And he described a lump and dull pain in his left shoulder *since* receiving a flu shot at Costco in September when he returned for medical care on April 17, 2019. *Id.* at 10. When seen by an orthopedist five days later, he "state[d] [that] his symptoms *began 09/29/18 after* he had a flu-shot." Exhibit 3 at 84 (emphasis added).

All of the above amounts to preponderant evidence establishing Petitioner likely suffered left shoulder pain immediately upon vaccination. The lack of a single contemporaneous item of evidence *specifically* identifying onset in 48 hours is simply not a basis for finding against Petitioner, since the other evidence taken together supports a favorable finding. And frankly, such an entry specifically alleging a 48-hour pain onset would be less supportive of a SIRVA injury as it would indicate prior knowledge of the Table requirements. Petitioner has satisfied the second criterion for a Table SIRVA injury.

### 2. Site of Vaccination – Third Criterion

Petitioner's vaccine record in this case includes a designation showing he received the flu vaccine in his left arm as alleged. Exhibit 1 at 1 (indicating "LA" in the vaccine record); *see* Brief at 9 (discussing this record). And, in his later response, Respondent appears to abandon his earlier argument regarding situs and location of pain and reduced ROM in his later filed response. *Compare* Rule 4(c) Report at 5-6 *with* Opp. at 6-8; *see* 42 C.F.R. § 100.3(c)(10)(iii). Thus, I find Petitioner received the flu vaccine in his left, injured shoulder as alleged, and has met the third Table criterion.

### 3. Other QAI Criteria

Respondent does not dispute any other Table SIRVA requirements, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iv). A thorough review of the record in this case does not

reveal a prior or current condition or abnormality which would explain Petitioner's condition or pain. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## III. Compensation Awarded for Past Pain and Suffering

### A. Legal Standards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *McKenna v. Sec'y of Health & Hum. Servs.*, No. 21-0030V, 2023 WL 5045121, at *1-3 (Fed. Cl. Spec. Mstr. July 7, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B. Parties' Arguments

Emphasizing the severe pain level - rated as seven out of ten, that he reported at his first orthopedic appointment, more than six-months post-vaccination, and pain with

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

movement after a cortisone injection one month thereafter, Petitioner seeks $80,000.00 for past pain and suffering. Brief at 12-14. He maintains that he stopped going to physical therapy ("PT") in late December 2019, after 23 sessions, because he "decided to take some time off during the holidays, and come back at the end of January." *Id.* at 14. Portraying his SIRVA as moderate, he favorably compares the facts and circumstances in his case to those experienced by the petitioners in *Vinocur* and *Sherbine*[5] - decisions featuring awards of $70,000.00. *Id.* at 13-14.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $35,000.00 for past pain and suffering. Opp. at 10. Characterizing Petitioner's injury as "mild and limited," he argues that "the most crucial period of time, in terms of severity and treatment, was only *one* month, from the end of April until the end of May 2019." *Id.* at 11 (emphasis in the original). He emphasizes the significant improvement Petitioner made thereafter, as well as initial delays before reporting his symptoms to his PCP (four months) and seeking treatment from an orthopedist (almost seven months). *Id.* at 11-12. Distinguishing the cases cited by Petitioner, Respondent instead proposes *Ramos* and *Mejias*[6] – involving pain and suffering awards of $40,000.00 and $45,000.00, respectively. Opp. at 12-14.

### C. Appropriate Pain and Suffering Award

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The medical records show that, except for a one-month period from April to May 2019, Petitioner experienced only mild SIRVA symptoms. Even during this one-month

---

[5] *Vinocur v. Sec'y of Health & Hum. Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Sherbine v. Sec'y of Health & Hum. Servs.,* No. 17-0413V, 2020 WL 1933136 (Fed. Cl. Spec. Mstr. Mar. 27, 2020).

[6] *Ramos v. Sec'y of Health & Hum. Servs.,* No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021); *Mejias v. Sec'y of Health & Hum. Servs.,* No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021).

period, Petitioner stated that his more severe pain primarily occurred with movement. Exhibit 2 at 10; Exhibit 3 at 71. The only time he reported *constant* and severe pain was during an orthopedic visit on April 22, 2019. Exhibit 3 at 84. And he reported significant improvement (for at least a week) after receiving a cortisone injection the following week on April 29, 2019. Exhibit 3 at 71. Furthermore, Petitioner's pain substantially lessened after the application of tape at his first PT session on May 10, 2019. By his second session on May 17, 2019, he reported that "the tape gave him a lot of relief," and "he [wa]s feeling a noticeable difference." *Id.* at 69.

Additionally, Petitioner's initial symptoms were mild. He first mentioned his left shoulder pain at a PCP visit on February 18, 2019, but did not seek treatment until mid-April 2019, almost seven months post-vaccination. Exhibit 2 at 13 (1/18/19 visit), 7, 10-11 (4/17/19 visit). Although this significant delay did not prevent Petitioner from establishing the pain onset needed for a Table injury, it provides credible evidence of a milder initial injury.

The only case cited by the parties which shares enough similarities to provide helpful guidance to the present case is *Ramos*, involving a petitioner who also suffered milder symptoms and delayed seeking treatment for four months. *Ramos,* 2021 WL 688576, at \*5. However, the *Ramos* petitioner did not receive a cortisone injection and attended approximately half the number of PT sessions. *Id.* Thus, Petitioner's award should be higher than the $40,000.00 awarded in *Ramos.*

The remaining cases cited by the parties do not offer helpful comparisons. The *Mejias* petitioner sought treatment only two days post-vaccination, suffered moderate pain levels throughout his injury, and did not receive a cortisone or attend any PT. *Mejias,* 2021 WL 5895622, at \*6-7. Differing from Petitioner's circumstances by almost every metric, it provides little guidance. Additionally, both cases cited by Petitioner, *Vinocur* and *Sherbine*, involved petitioners who suffered more significant pain levels and limitations in ROM throughout the duration of their injuries. *Vinocur.*, 2020 WL 1161173, at \*12-14; *Sherbine*, 2020 WL 1933136, at \*2-3, 10-11. The *Vinocur* petitioner's pain was so severe that he questioned whether he could continue PT. *Vinocur,* 2020 WL 1161173, at \*3-4.

Instead, I find *Rayborn, Welch,* and *Couch*[7] – decisions featuring awards of $55,000.00, to be better comparable cases. All involved petitioners who delayed treatment, suffered symptoms involving similar severity and duration, and required, at most, one cortisone injection and a similar amount of PT. *Rayborn,* 2020 WL 5522948, at

---

[7] *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020); *Welch v. Sec'y of Health & Hum. Servs.,* No. 18-0660V, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 2, 2021); *Couch v. Sec'y of Health & Hum. Servs.,* No. 20-1246V, 2022 WL 4453921 (Fed. Cl. Spec. Mstr. Aug. 24, 2022).

*2, 11-12; *Welch,* 2021 WL 4612654, at *2-4; *Couch,* 2022 WL 4453921, at *3-5. Additionally, like Petitioner (44 years old), the *Rayborn* and *Couch* petitioners (both 35 years old at the time of vaccination) were not likely to have experienced significant degenerative changes prior to vaccination. *Rayborn,* 2020 WL 5522948, at *2; *Couch,* 2022 WL 4453921, at *3. And MRI results in all cases support that proposition. *Id.*; *see also* Exhibit 3 at 91-92 (Petitioner's MRI results). Thus, I find Petitioner should receive the same amount of compensation for past pain and suffering as I awarded in these cases, $55,000.00 for past pain and suffering.

### IV.     Compensation for Unreimbursed Expenses – Mileage Rate

The parties agree that Petitioner should be awarded $4,659.14, plus reimbursement for 1,190 miles of travel. Brief at 16, Opp. at 15; Reply at 5. Petitioner maintains that this travel should be reimbursed using $0.58 per mile, the IRS business mileage rate. Brief at 16; Reply at 5. Respondent argues that $0.20, the IRS medical mileage rate, should be applied. Opp. at 15; 15 n.6.

To support his position, Petitioner cites several cases from the late 1990s, showing other special masters have determined the IRS business rate is appropriate to use in vaccine cases when calculating travel expenses. Reply at 5 (citing *Williams v. Sec'y of Health & Hum. Servs.,* No. 99-2239V, 1996 WL 608455 (Fed. Cl. Spec. Mstr. Oct. 10, 1996) and *Ashe-Robinson v. Sec'y of Health & Hum. Servs.,* No. 94-1096V, 1997 WL 54350 (Fed. Cl. Spec. Mstr. Jan. 23, 1997)). As the *Williams* special master explained, the greater business mileage rate "is intended to cover *all* costs of driving a car," not only the cost of gasoline and oil. *Williams,* 1996 WL 608455, at *2. Thus, both special masters found it more appropriate to reimburse this *full* cost when a petitioner drives her personal car to medical treatment. *Id.*; *Ashe-Robinson,* 1997 WL 54350, at *2-3 (reimbursing the petitioner for the full cost of operating her personal vehicle using the greater IRS business rate but only actual costs for meals and gasoline when transported in another individual's car).

Although Respondent references a more recent decision involving the application of the medical mileage rate, it does not provide the strong support he suggests. Opp. at 15 n. 6 (citing *Hood v. Sec'y of Health & Hum. Servs.,* No. 16-1042V, 2021 WL 5755324, at *11 (Fed. Cl. Spec. Mstr. Oct. 19, 2021)). In *Hood,* the petitioner (who suffered from Guillain-Barré syndrome) requested an amount to cover the cost of Uber rides to and from a recommended work hardening program, while Respondent countered that Petitioner should be able to drive himself to these sessions as the *Hood* petitioner's award included the amount needed to add hand controls to his car. *Hood,* 2021 WL 5755324, at *7. Although the special master ruled in favor of Respondent, there is nothing in the decision

to suggest that the *Hood* petitioner opposed the lower medical mileage rate employed by Respondent or that the special master considered the mileage issue. *Id.* at *11.

I recently determined that travel expenses should be reimbursed using the IRS business mileage rate employed in *Williams* and *Ashe-Robinson*, and Respondent has again not persuaded me that the lower medical mileage rate is more appropriate. *See Gibson v. Sec'y of Health & Hum. Servs.,* No. 20-0243V, 2022 WL 17820891, at *12 (Fed. Cl. Spec. Mstr. Oct. 5, 2022). I will award Petitioner amount of travel expenses he seeks, $690.20, based upon a business mileage rate of $0.58, as well as the agreed amount of unreimbursed expenses, $4,659.14. The total amount of unreimbursable expenses awarded is $5,349.34.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $55,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[8] I also find that Petitioner is entitled to $5,349.34 in actual unreimbursable expenses.**

**I therefore award Petitioner a lump sum payment of $60,349.34, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

                                                 <u>s/Brian H. Corcoran</u>
                                                 Brian H. Corcoran
                                                 Chief Special Master

---

[8] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.